UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:14-CR-085 |
| | ) | |
| MARY M. COKER | ) | |

### MEMORANDUM OPINION

This matter is before the Court on the defendant's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for immediate compassionate release. [Doc. 856]. The United States has responded in opposition to the motion, and the defendant has submitted a reply. [Docs. 861, 866]. The matter is now ripe for the Court's review. For the reasons stated below, the defendant's motion for immediate compassionate release will be granted.

### I. BACKGROUND

In March 2015, the Honorable Thomas W. Phillips sentenced the defendant to a 96-month term of imprisonment, to be followed by five years' supervised release, for conspiring to manufacture methamphetamine. [Doc. 454]. According to the Bureau of Prisons ("BOP"), the defendant is presently incarcerated at FMC Carswell with a scheduled release date of May 15, 2021. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Apr. 14, 2020).

Through counsel, the defendant now moves for immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. Recent BOP medical records appended to the motion show that the defendant, age 52, suffers from

1

COPD and is oxygen dependent. [Doc. 854, ex. 4]. In January of this year, the defendant caught the flu, resulting in more than three weeks' placement in both a hospital and long-term care facility due to COPD exacerbation. [*Id.*] According to medical records, the defendant was in the long-term care facility from February 5 through 20, 2020, because BOP was "unable to provide the high amount of oxygen needed." [*Id.*] The defendant was in acute respiratory failure. [*Id.*]

According to an undated assessment by a medical officer at FMC Carswell, the defendant's COPD has gradually worsened during her incarceration. [*Id.*, ex. 5]. She is wheelchair dependent and requires round-the-clock supplemental oxygen. [*Id.*] The BOP medical officer wrote that the defendant's "lung function is not reversible and will only continue to decline. Even with maximal medical management. [*Id.*] (punctuation in original). According to the BOP, the defendant has a "[p]oor prognosis. Given patient's age and severe COPD, she will have continued decline in her lung function which may ultimately lead to her death." [*Id.*]

The defendant contends that her medical conditions constitute "extraordinary and compelling reasons" under § 3582(c)(1)(A) that warrant a sentence reduction, particularly in light of the current COVID-19 pandemic. [Doc. 856]. She requests that her sentence be reduced to time served and that her conditions of supervised release be modified to accommodate her release plan, which involves living with a friend in Lake Panasoffkee, Florida. [*Id.*, ex. 3].[1] Specifically, Defendant requests that her conditions of supervised

---

[1] In August 2019, the United States Probation Office in the Middle District of Florida approved the defendant's proposed residence. [*Id.*]. On April 14, 2020, the Court conferred with the probation office of this district, which in turn confirmed that the defendant's proposed residence is still approved.

2

release be modified to allow her to live in the Middle District of Florida, to report to the probation officer by telephone, and to be excused from the condition of her judgment requiring that she maintain employment while on supervision.  [Doc. 856].

Also appended to the defendant's motion is her April 2, 20<u>19</u> Application for Compassionate Release under § 3582(C)(1)(A)(i), which was denied by the BOP in October 2019.  [*Id.*, exs. A, B].  In that application, the defendant "request[ed] compassionate release due to my rapidly failing health"—namely, COPD and emphysema, oxygen usage, wheelchair dependence, and other mobility limitations.

The United States opposes compassionate release on exhaustion of remedies grounds, arguing both that the instant motion raises claims different than those presented to the BOP in 2019, and that the defendant has presented a renewed *pro se* request to the BOP within the last 30 days.  [Doc. 861].  In support of the latter argument, the United States has submitted the defendant's handwritten April 1, 2020 *pro se* Inmate Request to Staff form, in which the defendant asks in full, "I would like to be considered for home confinement and early release under COVID-19."  [*Id.*, ex. 1].

In reply, the defense contends that the instant motion is based on the same health conditions presented in the 2019 *pro se* § 3582 request.  [Doc. 866].  As to the April 1, 2020 *pro se* Inmate Request to Staff, it is the defense's position that,

> In the case of Ms. Coker's "inmate request," a decision by the BOP to move an inmate to home confinement is a completely separate mechanism than the relief available under 18 U.S.C. § 3582(c)(1)(A)(i).  The mere fact that Ms. Coker included the words "early release" in a hand-written inquiry cannot justify a denial of her compassionate release request which was formally submitted over five months after she exhausted her administrative remedies and was denied release.

3

> . . . The government's suggestion that this hand-written plea for help should be manipulated by this Court to erect complex jurisdictional barriers to Ms. Coker's valid request for relief is illogical and unjust.

[*Id.*].

## II.  DISCUSSION

As noted by the defense, two distinct statutory "mechanisms" are currently receiving heightened attention from the courts and the BOP as they grapple with release requests during the current pandemic.

First, section 12003 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), presently and temporarily provides for expanded prisoner home confinement. The CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. *See id.*; *accord* 18 U.S.C. § 3624(c)(2). Courts therefore do not have power to grant relief under Section 12003 of the CARES Act.

Alternatively, 18 U.S.C. § 3582(c)(1)(A)(i) allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not the defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release with the court, after filing a request for the BOP to file such a motion on his behalf, and being denied. *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019). Beyond this change, the statute still applies the same statutory requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *Id*.

The Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is contained in U.S.S.G. § 1B1.13 and the accompanying Application Notes. *United States v. McGraw*, No. 2:02-cr-18, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *Id*. at *2 (citations omitted). Moreover, the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider. *See id*. (concluding likewise).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address

whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### A. Exhaustion

In this case, the government argues extensively that the defendant has not properly exhausted her remedy of requesting relief from the BOP, and therefore this Court lacks authority to grant relief under § 3582(c)(1)(A). First, the government argues that the instant motion is based on COVID-19 which is a different "fact and circumstance" than what was presented in the defendant's April 2019 *pro se* Application for Compassionate Release (worsening emphysema and COPD), and thus the "new" request must be presented to the BOP first. The Court disagrees. While it is true that the present motion discusses COVID-19 at length, it does so to illustrate the increasing danger presented by the defendant's previously cited health conditions. The defendant's prior application was based on emphysema, COPD, and her nearly 24 hour per day reliance on oxygen and a wheelchair. The instant motion is based on those very same conditions. As such, the Court finds that the present motion is not a new request which must be first presented to the BOP.

The Court also reject the United States' argument that the defendant's recent *pro se* submission of an Inmate Request to Staff constitutes a new § 3582(c)(1)(A)(i) request. Viewed in context, that form is plainly a CARES Act request to be released to home

6

confinement. It was submitted on April 1, 2020, a mere five days after the CARES Act authorized BOP to consider expanded home confinement eligibility. The defendant is not an attorney. Instead, she has a seventh-grade education and reports occasional trouble writing. [Doc. 336, ¶ 128]. On those facts, while the defendant indeed requested "home confinement *and early release* under COVID-19" (emphasis added), the Court will not hold her to the same standards of semantic precision that it would hold an attorney. Moreover, the Court notes that the defendant's prior *pro se* § 3582(c)(1)(A) request was submitted on an Application for Compassionate Release form. If it was her intention two weeks ago to submit another § 3582(c)(1)(A) request, she has demonstrated that she knows what form to use.

      The Court is therefore not persuaded that it lacks authority to address this matter. The plain language of § 3582(c)(1)(A), as amended by the First Step Act, gives the Court authority to act "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf <u>or</u> the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). Other district courts have recognized that the language of § 3582(c)(1)(A), as amended by the First Step Act, requires the defendant to file an administrative request with the BOP "and then either exhaust administrative appeals <u>or</u> wait thirty days after submitting his request to the BOP." *See, e.g., United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *1 (M.D. Fla. June 7, 2019) (emphasis added).

7

Here, Defendant filed an administrative request with the BOP in 2019, asking for compassionate release on the same fundamental grounds as the instant motion. In October 2019, the BOP declined to file such a motion on the defendant's behalf. She does not have a new request that has been pending before the BOP for 30 days or less. Accordingly, the Court concludes that it has authority under § 3582(c)(1)(A) to address the instant motion.

## B. Merits

### 1. Extraordinary and Compelling Reasons

The Application Notes to guideline 1B1.13 provide, in part:

1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1.

The Court finds the defendant's combination of medical conditions, particularly her COPD and extensive need for oxygen therapy, to be extraordinary and compelling reasons justifying a sentence reduction. The BOP acknowledges that the defendant has worsening, severe, and irreversible COPD which will cause "continued decline in her lung function which may ultimately lead to her death." She is now essentially wheelchair bound and requires round-the-clock supplemental oxygen. Her recent bout with the flu led to acute respiratory failure and long-term care facility placement because the BOP was "unable to provide the high amount of oxygen needed." With or without consideration of the dangers of the current pandemic, the defendant has demonstrated "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," *id.* cmt. n.1(A)(ii)(I), thus constituting an extraordinary and compelling reason for sentence reduction pursuant to § 3582(c)(1)(A).

### 2. Danger to Any Other Person or to the Community

Guideline 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2). Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial. Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court has considered the defendant's plea agreement [doc. 126], her Presentence Investigation Report ("PSR") [doc. 336], and her Bureau of Prisons SENTRY Report. The defendant's role in this conspiracy case was that of a "smurf," providing a significant quantity for pseudoephedrine to co-conspirators for use in the manufacture of methamphetamine. That conduct was serious. There is, however, no evidence that the defendant used or encouraged violence in this case, or that she possessed a weapon. [Doc. 336, ¶¶ 31-38].

The defendant's criminal history and record of arrests is lengthy, spanning from paragraph 57 to paragraph 113 of the PSR. The majority of those convictions and arrests pertain to theft, driving, and drug offenses, consistent with the defendant's history of

10

substance abuse beginning at age 12. Additionally, there was an assault conviction in 2002 for scratching the face of an arresting officer. [*Id.*, ¶ 64]. A 2003 weapon possession charge was not prosecuted. [*Id.*, ¶ 65]. There was a 2005 weapon possession conviction about which the probation office was unable to obtain further information. [*Id.*, ¶ 68]. A 1996 domestic violence charge was dismissed. [*Id.*, ¶ 93].

According to her SENTRY Report, the BOP classifies the defendant as a minimum security inmate with a minimum risk of recidivism. She has incurred only one disciplinary sanction while incarcerated, resulting from her admittedly possessing "the pills" on February 20, 2020. The sanction for this offense was 15 days' loss of phone privileges, suggesting that the infraction was not serious.

The defendant appears to have limited family ties. [Doc. 336, ¶¶ 114-16]. She has, however, arranged for a post-release residence which the probation office deems suitable. The defendant has limited financial resources but has previously been approved for Social Security disability payments. [*Id.*, ¶¶ 129-31].

The above facts, paired with the defendant's serious physical impairments and limited mobility, persuade the Court that the defendant would not pose a danger to the safety of any other person or the community if released.

### 3. Section 3553(a) Factors

Section 3553(a) provides:

> (a) Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

11

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];

   . . . .

(5) any pertinent policy statement guidelines [issued by the Sentencing Commission];

   . . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The defendant contends that, under the § 3553(a) factors, her time served constitutes a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing. The Court agrees.

12

Many of the pertinent § 3553(a) factors have already been discussed in the preceding section of this memorandum. As for the considerations of adequate deterrence and the avoidance of unwarranted sentence disparity, the Court notes that the defendant has been in federal custody since July 21, 2014. [Doc. 336, p 1]. She has served the bulk of her 96-month sentence, with only 13 months left. A five-year term of supervised release remains in place.

The Court finds that reducing the defendant's sentence to of time served is consistent with the § 3553(a) factors. Although it does not wish to minimize the seriousness of the defendant's offense and her criminal history, the Court concludes that the defendant's service of almost six years in prison is sufficient under the § 3553(a) factors. The remaining 13 months of the defendant's sentence is negligible for purposes of achieving the goals of sentencing but is far from negligible as it pertains to her serious physical condition.

Thus, the Court concludes that, in light of the defendant's serious medical conditions, her continued incarceration would not serve the goals of sentencing as set forth in the § 3553(a) factors. Because the Court finds that the defendant has shown extraordinary and compelling reasons for a reduction, and that she does not pose a danger to the safety of any other person or the community, and that a reduction in sentence would be consistent with the § 3553(a) factors, the defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) will be granted.

### C. Conditions of Supervised Release

The defendant requests that her conditions of supervised release be modified to accommodate the reasons for the sentence reduction. Specifically, she asks that she be allowed to reside in the Middle District of Florida, that she be allowed to report to the probation officer by telephone, and that the employment requirement be excused. The government did not respond to these requests.

The Court may, in its discretion, modify a condition of supervised release at any time prior to the expiration of the supervised release term, pursuant to the provisions governing the initial setting of supervised release conditions. 18 U.S.C. § 3583(e)(2); *United States v. Johnson*, 529 U.S. 53, 60 (2000). Specifically, the Court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) in modifying conditions of supervision. 18 U.S.C. § 3583(e). "The applicable statutory provisions generally require that the conditions be reasonably related to the goals of rehabilitation of the defendant and the protection of the public, and involve no greater deprivation of liberty than is reasonably necessary." *Green v. United States*, No. 3:08-0784, 2010 WL 2010937, at *2 (M.D. Tenn. May 19, 2010) (citing *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1997); Fed. R. Crim. P. 32.1(c)).

Although the Court generally must hold a hearing before modifying conditions of supervised release, the hearing is not required if: (1) the relief sought is favorable to the person and does not extend the term of supervised release; and (2) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so. Fed. R. Crim. P. 32.1(c)(2)(B)-(C). The Court concludes that

no hearing is necessary in this case, as the relief sought is favorable to the defendant, does not extend the term of supervision, and the government received a chance to respond to the requests but failed to do so.

The Court finds that, considering the applicable factors under § 3553(a), the defendant's requested modifications to her conditions of supervised release are largely reasonable. Her plan to reside in the Middle District of Florida has already been approved by the probation office. The defendant's request to waive the employment condition is reasonable in light of her physical condition. As to the defendant's request that she be allowed to report to her probation officer by telephone, the Court finds this request appropriate—at least initially—in light of the defendant's medical conditions and the COVID-19 precautions currently in place. Accordingly, the Court will substantially grant the defendant's request to modify the conditions of supervised release.

### III. CONCLUSION

Accordingly, for the reasons stated herein, Defendant's motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for immediate compassionate release [doc. 856] will be **GRANTED**. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge